UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –  X

MID-NEW YORK ENVIRONMENTAL AND
SUSTAINABILITY PROMOTION COMMITTEE, INC.
(d/b/a NYENVIRONCOM); ROBERT MAJCHER; GRACE
WOODARD; and ALEX SCILLA,

                           Plaintiffs,

      -against-

DRAGON SPRINGS BUDDHIST, INC.,

                           Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –  X

Case No.

**COMPLAINT WITH
JURY DEMAND**

         Plaintiffs, by their attorney, RIVKIN RADLER LLP, as and for their Complaint, allege:

### NATURE OF ACTION

    1.      Defendant Dragon Springs Buddhist, Inc. ("Dragon Springs") has constructed a large compound on approximately 393 acres of land in the unincorporated hamlet known as Cuddebackville, located in the Town of Deerpark, Orange County, New York ("Compound"). The Compound acts as the world headquarters of the Falun Gong movement that promotes traditional Chinese culture and is opposed to the government of the People's Republic of China.  The Compound also acts as the headquarters for eight Shen Yun music and dance companies.

    2.      The Compound has numerous structures including a performing arts center, an arts college, a 5th to 12th grade school, residential housing, temples and a wastewater treatment plant. Major construction activity has been ongoing at the compound since the spring of 2021.  The construction activity has disturbed more than one acre of land at the Compound.

    3.      As a result of the individuals who occupy the structures at the Compound, Fecal Coliform is generated. The Compound has a wastewater treatment plant to treat the wastewater generated at the Compound which contains Fecal Coliform. The permit for the wastewater

treatment plant prohibits the discharge of Fecal Coliform into the surface waters adjacent to the Compound.

4.     The Compound is located in the southern tier of the Shawangunk Mountains, and Dragon Springs' property on the northeast side is a steep slope from the Compound to the immediately adjacent Basher Kill and Neversink River. The slope contains numerous gullies and pathways from the Compound that are point sources that empty into these waters.  These waterways are an integral part of the rural beauty of the area, and provide recreational resources to residents and visitors alike.  Dragon Springs has been cited by the New York State Department of Environmental Conservation and the Town of Deerpark for a number of violations involving the construction activity at the Compound.

5.     As fully explained below, beginning in 2020 and continuing to this day, Dragon Springs has been discharging from point sources at the Compound into the Basher Kill and Neversink River polluted wastewater and storm water containing Fecal Coliform well beyond the limits of Dragon Spring's permits and applicable law.  This discharge has been confirmed through water testing verified by a licensed laboratory.  The discharge is the result of construction activity and an improperly maintained and operated wastewater treatment plant.

6.     The New York State Department of Environmental Conservation ("DEC"), United States Environmental Protection Agency ("EPA"), and Dragon Springs were given notice of the intent to bring an action under the United States Clean Water Act for injunctive and other relief relative to the discharge of fecal matter into the subject waterways. Sixty (60) days have elapsed from this notice and the violations continue.  The DEC and the EPA have failed to take any steps to address Dragon Springs' violations.  Accordingly, this action is commenced under the Clean Water Act to remedy these violations, and contains a pendent state law claim.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to CWA §505(a)(1), 33 U.S.C. §1365(a)(1), and 28 U.S.C. §1331.

8.      This Court has supplemental jurisdiction over the private nuisance state law claim under 28 U.S.C. §1367(a).

9.      On January 9, 2023, plaintiffs provided notice of Dragon Springs' violation of the Clean Water Act and of their intention to file suit against Dragon Springs to Dragon Springs, the Administrator of the United States Environmental Protection Agency, Region 2, and the New York State Department of Environmental Conservation.

10.     More than sixty (60) days have elapsed since the notice was provided.  Accordingly, Plaintiffs have complied with the Clean Water Act's notice requirements set forth in CWA §§505(b)(1) and 33 U.S.C. §1365(b)(1).

11.     Upon information and belief, neither the EPA nor the State of New York has commenced or is diligently prosecuting an action to redress the violation alleged in this Complaint.

12.     This action is not barred by any prior administrative penalty under CWA §309(g), 33 U.S.C. §1319(g).

13.     Venue is proper in the United States District Court for the Southern District of New York pursuant to CWA §505(c)(1), 33 U.S.C. §1365(c)(1), and 28 U.S.C. §1391(b)(2) because the source of the violation complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

## PARTIES

14.     Plaintiff Mid-New York Environmental Sustainability Promotion Committee, Inc., d/b/a NYenvironcom (hereinafter "NYenvironcom"), is a nonprofit corporation whose mission is to help create, build, and strengthen thoughtful land use policies and practices that encompass environmental, community, and economic values.  NYenvironcom members live within the region wherein the Compound, the Basher Kill, and the Neversink River are located.

15.     Plaintiff Robert Majcher is the owner of real property located at 112 Galley Hill Road, Deerpark, New York, that is adjacent to the Basher Kill immediately across from the Compound.  Mr. Majcher enjoys canoeing and other leisure activities on the Basher Kill and Neversink River.

16.     Plaintiff Grace Woodard is the owner of real property located at 350 Guymard Turnpike, Deerpark, New York.  Ms. Woodard's property is directly across the street from the Compound.  Ms. Woodard enjoys the rustic nature of the area around her property, as well as the clean water of the Basher Kill and Neversink River.

17.     Plaintiff Alex Scilla owns property in New Paltz, and often utilizes the Basher Kill and Neversink River for recreational purposes.

18.     All of the individual plaintiffs are members of NYenvironcom.

19.     Upon information and belief, Dragon Springs is a nonprofit organization and is the owner of the Compound and the surrounding properties, including property that is immediately adjacent to the Basher Kill and Neversink River.

## BACKGROUND AND FACTS

20.     Dragon Springs is operated by the Falun Gong movement, which has millions of followers worldwide.  Falun Gong promotes traditional Chinese philosophies and claims

persecution by the People's Republic of China. Dragon Springs also operates the eight Shen Yun performing arts companies that appear worldwide and have practice facilities at the Compound. The Compound acts as the worldwide headquarters for Falun Gong, which is also the publisher of The Epoch Times.

21.     The Compound is located on a mountainside in the southern tier of the Shawangunk Mountains in a rural section within the Town of Deerpark, Orange County with many environmentally sensitive areas, including the Basher Kill, Neversink River and associated wetlands. Dragon Springs' property on the northeast side is a steep slope from the Compound to the immediately adjacent Basher Kill and Neversink River. The slope contains gullies and pathways from the Compound that are point sources that empty into these waters. These waterways are an integral part of the rural beauty of the area, and provide recreational resources to residents and visitors alike.

22.     The Basher Kill empties into the Neversink River that then empties into the Delaware River. Both the Neversink and Delaware Rivers are currently used, were used in the past, or are susceptible to use in interstate or foreign commerce.

23.     Access to the Compound by the general public is prevented by fencing along its property line, security gates, security guards, security dogs, woods, and its elevation.

24.     The Compound consists of numerous buildings, including a performing arts center and a wastewater treatment plant.

25.     On November 14, 2018, Dragon Springs submitted a proposed site plan amendment for its facilities located at the Compound, and filed a draft environmental impact statement ("DEIS") in connection with its application.

26.    The proposed site plan includes a temple building, two religious schools, a wastewater treatment plant, a performing arts center, a new parking structure, a large dormitory, various other structures, and the reconfiguration and resurfacing of roads.

27.    A number of the structures and improvements to the Compound were already completed when the DEIS was submitted even though no permits had been attained.

28.    In fact, the draft DEIS acknowledged that improvements were made without the required approvals, providing:

> The Site consists of 393 acres on the single tax lot in the Rural Residential (RR) Zoning District located at 140 Galley Hill Road in the Town of Deerpark, Orange County, New York.  The Site is currently developed and operated as a place of worship.  The Site is improved with temple buildings, two religious schools and various accessory structures.  The Facility was originally constructed for religious use in 2001 and has undergone several plan modifications since that time.  The Project Sponsor's most recent site plan approval is dated June 25, 2014.  That approval included all elements on the June 25, 2014 approved site plan as well as all buildings, structures and uses existing on the Site as of June 25, 2014 or under construction at that time.  The approval of all existing structures and ongoing construction was pursuant to a court-ordered Stipulation of Settlement.  **Since that time, some structures on the Site have been constructed without a Planning Board approval.**  These items are part of the present application (see Table II-1, Existing Items).  (emphasis supplied)

29.    The DEIS describes the broad scope of the project for which an amended site plan was requested.  The DEIS provides:

**C. Project Description**

The Project Sponsor is seeking approval of a comprehensive site plan to both expand the religious use on the Site and to rectify various structures which were constructed without Planning Board approval. The Project Sponsor also seeks to relocate and/or reconfigure various structures that have been approved but are not yet constructed.

The following items comprise the Proposed Action:

- A partially constructed meditation hall will be converted to a residence hall with 30 rooms that will accommodate an additional 40 onsite residents. This building will be served by the Site's water and wastewater systems.

- A 920-seat music hall will be constructed to host performances. This building will have a 72,800 square foot footprint and will be connected to the community water and wastewater system.

- A concrete plaza with a sculpture and fountain located to the east of the existing rehearsal hall requires approval.

- An elevated emergency access plaza is proposed to allow fire trucks to access to the existing buildings.

- A glass atrium will be constructed as an entrance lobby to the existing college building.

- A new rehearsal hall will be constructed on the existing concrete plaza area to the east of the existing religious educational buildings. After construction, this rehearsal hall will be on the first level underneath the expanded Parking Garage B. The new rehearsal hall will be approximately 15,600 square feet.

- Lake Drive will be reconfigured and resurfaced and the covered driveway will be extended. Modifications to the existing dam are also proposed together with a bridge to allow water to flow between the existing lake and proposed lake. A new dam is also proposed on the east side of the proposed lake. The modifications to Lake Drive, the covered driveway, dam and the bridge are to conform to NYSDEC comments.

- A new parking structure (Parking Garage A) will be constructed with 1,098 car parking spaces and 42 designated bus spaces, replacing parking lot 1 which had 81 car spaces and 5 bus spaces. The new parking structure will be conveniently located adjacent to the music hall to accommodate guests attending events. Parking Garage B will also be expanded to 214 for a net increase in onsite parking of 1,084 car spaces. Parking lot 2 will be replaced by Parking Garage B. Parking lot 3 will remain as it currently exists. Total onsite parking will be 1,324 spaces car spaces and 42 bus spaces.

- Modifications to the North Gate bridge and driveway entrance require approval. The North Gate bridge has been widened from 13 feet to between 13 feet 2 inches and 15 feet 2 inches. The North Gate driveway entrance, the Site access from Galley Hill Road, will be raised and widened. A negative 2% grade will be maintained for the first 15 feet of the driveway. The width of the driveway will be 51 feet with permeable

driveway pavers adjacent thereto for a distance of 16 feet and 17 feet on either side. The Zoning Board of Appeals granted variances for these modifications to the North Gate bridge and North Gate driveway entrance. Galley Hill Road will also be raised approximately 1.8 feet to create a more safe condition at this intersection. Improvements within Galley Hill Road will be consistent with Town road specifications.

- A statue work shed will be expanded to 11,000 square feet in the northwestern area of the Project Site. This structure will not have water or sewer connections. Its purpose is to provide workspace for the construction of Buddha statues.

- A previously approved but not yet constructed storage shed in the area of the proposed new parking structure (Parking Garage A) will be relocated northwest.

- A 2,100-square foot construction work shed is proposed to the east of Parking Garage A.

- A 110-square foot Fire Pump House is to be relocated from its previously approved location northerly, in between the proposed concrete plaza and Parking Garage A. It is proposed to be constructed below-grade with underground utility connections.

- The existing 18,400 GPD wastewater collection system requires modifications to bring the system into conformity with its permit. These improvements will be completed as an interim mitigation for wastewater treatment until a new wastewater treatment plan is approved and constructed. A new 100,000 GPD Wastewater Treatment Plant is proposed to replace the existing community wastewater system. This will include a new 50 by 50-foot building and underground utility connections.

- Twelve additional wooden gazebos will be constructed on the Site for a total of 17 on the Site. Three are newly proposed (Gazebos #16, #17 and #18) and one (Gazebo #9) is previously approved, not yet constructed, and is being relocated. The other 8 (Gazebos #2, #3, #4, #5, #6, #10, #11 and #12) are already approved and are not being modified in any manner. Additional approval is required for 2 of the existing gazebos; Gazebo #13 has been constructed in a different location than what was approved and Gazebo # 15 has not yet been approved. All gazebos are on-grade structures with no utility connections.

- An internal green iron fence around the existing temple buildings and religious education buildings that varies in height from 7'/2 to 9 feet, depending on location, requires plan approval. Portions of this fence were constructed prior to June 25, 2014 and, as a result, it was deemed

approved by the court-ordered Stipulation of Settlement that approved all then-existing items and allowed completion of those then under construction. Even so, a height variance was required and because that variance has since been obtained, site plan approval is now being sought as a housekeeping matter.

- Storm water management basins and other infrastructure are proposed consistent with the NYSDEC design regulations. …

30.     Prior to the filing of the DEIS, Dragon Springs had been issued numerous governmental violations including those regarding its State Pollutant Discharge Elimination System ("SPDES") General Permit, construction of a bridge without approved plans, violation of DEC regulations for the construction of two bridges, and adding a story to the Rehearsal Hall/Performing Arts Center without a permit.

31.     There was extensive opposition to the proposed site plan amendments, with over 50 organizations and individuals submitting written comments to the Town of Deerpark Planning Board.

32.     On April 10, 2019, a public hearing was held regarding the DEIS filed by Dragon Springs in connection with the proposed site plan amendment.  At the public hearing, numerous residents spoke in opposition to the proposed amended site plan.  After the public hearing the Deerpark Planning Board directed Dragon Springs to submit a supplemental DEIS.  The supplemental DEIS has not been filed, and the application for approval of a site plan amendment is still pending over three years later.

33.     Yet, despite the fact that the supplemental site plan amendment has not been approved, it is clear that Dragon Springs is now simply proceeding with the improvements anyway.

**DESCRIPTION OF CONSTRUCTION ACTIVITIES AT THE COMPOUND**

34.     In the spring of 2021, increased construction activities were observed at the Compound.

35.    Large construction vehicles were seen entering the Compound, and construction activity could be heard.  This included in July and August of 2021 when numerous dump trucks were going to the Compound.

36.    Further, construction sounds can be heard coming from the Compound, and trucks carrying fill and Porta Potties have been observed in August of 2021.

37.    In addition, overhead photographs of the Compound reflect construction work being undertaken, including the installation of solar panels and stockpiles of construction material.

38.    When requests were made to the Town of Deerpark under New York State's Freedom of Information Law for any permits issued for this construction, the Town of Deerpark responded that there were none. In addition, when a Town inspector tried to go into the Compound he was met by a Dragon Springs employee.  When the inspector observed work being undertaken on a retaining wall, fence and storm water drain he was told he could not take pictures. Then, when he tried to gain access to other portions of the Compound, he was informed this area was not open to the public and if he wanted access he "should see a judge".

39.    Upon information and belief, there continues to be substantial construction occurring at the compound and the Town of Deer Park has undertaken no inspections for a year.

40.    Further, just recently Dragon Springs entered into a Consent Order with the DEC because of its acknowledged violations of applicable environmental laws.

**DISCHARGE INTO THE BASHER KILL AND NEVERSINK RIVER**

41.    At the same time as the onslaught of this construction activity, including the alterations to the wastewater treatment plant, the volume of water and corresponding spike in Fecal Coliform in the Basher Kill and Neversink River adjacent to the Compound were observed.

42.     For example, runoff of storm water from the Compound, as well as wastewater from the wastewater treatment plant, through the gullies and steep slope on Dragon Springs' property has dramatically increased the size of the stream alongside the Basher Kill to 30 feet wide and approximately 600 feet long, as well as increasing the width of the Basher Kill.

43.     Also testing of the water immediately adjacent to the Compound shows high levels of Fecal Coliform beyond the limits of any permit or applicable law.

44.     Specifically, Dragon Springs is the Permittee of a SPDES Permit issued by the New York State Department of Environmental Conservation ("DEC"), which has been delegated the authority by the United States Environmental Protection Agency to issue SPDES Permits under the National Pollutant Discharge Elimination System.

45.     Dragon Springs' SPDES Permit does not allow for the discharge of Fecal Coliform from the Compound to the surrounding surface water.

46.     Instead, Dragon Springs' SPDES Permit only allows discharge from the wastewater treatment plant at the Compound to underground treatment systems and for the treated wastewater to be discharged to subsurface groundwater. Further, under the SPDES permit, the amount of Fecal Coliform that may be discharged into the groundwater is restricted to an Effluent Limit to a daily mean of 200 parts per 100 ml during the months of May 1 through September 30.

47.     Dragon Springs is also subject to a Construction General Permit, which requires Dragon Springs to comply with the requirements of its SPDES Permit, and the Construction General Permit does not permit the discharge of Fecal Coliform into the surface waters adjacent to the Compound.

48.     In addition, 6 CRR-NY 703.4 contains surface water quality standards. This New York regulation restricts the amount of Fecal Coliform in surface water to 200 parts per 100 ml.

49.     From May 1, 2021 to the present, Dragon Springs is in violation of its SPDES Permit by discharging Fecal Coliform through wastewater and storm water runoff from point sources at the Compound to the surrounding surface waters. Further, as a result of the discharge by Dragon Springs, the level of Fecal Coliform in the surface water adjacent to Dragon Springs' compound is far in excess than the daily mean of 200 parts per 100 ml.

50.     The amount of Fecal Coliform in the surrounding waters in August 2021 contained a daily mean of 726 parts of Fecal Coliform per 100 ml, over three times the permitted amount. Further, this illegal discharge has been occurring at least since 2020.  Testing done in July 2020 reflected Fecal Coliform amounts of 461 parts per 100 ml, in August 2020 Dragon Springs discharged water with Fecal Coliform amounts of 290 parts per 100 ml.  In addition, the Fecal Coliform amounts in the surrounding water were on August 8, 2022, 2419.6 parts per 100 ml; on October 14, 2022 2419.6 parts per 100 ml; on November 9, 2022 344.8 parts per 100 ml; December 13, 2022 1396 parts per 100 ml, and April 18, 2023 1050 parts per 100 ml.

51.     Dragon Springs discharged and continues to discharge wastewater containing Fecal Coliform as a result of Dragon Springs' failure to properly maintain its wastewater treatment plant and the construction activity at the Compound.  This discharge is through point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States. Dragon Springs' SPDES Permit and General Construction Permit do not allow for the discharge of Fecal Coliform to surface water, and Dragon Springs does not have any other permit authorizing such discharges.  Each and every day Dragon Springs discharges wastewater without authorization under its SPDES Permit is a separate and distinct violation of CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and 1342.

52.     In addition, Dragon Springs has discharged wastewater and storm water from point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the surface water adjacent to the Compound causing these waters to exceed New York State's limit of 200 parts per 100 ml.

53.     Upon information and belief, unless appropriate relief is granted, the discharge by Dragon Spring of water into the Basha Kill and Neversink River containing Fecal Coliform amounts greater than permitted by law and/or its SPDES Permit will continue.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Discharge of Storm Water: Unlawful Discharge of Pollutants

54.     Plaintiffs incorporate by reference all preceding paragraphs as if set forth herein.

55.     CWA Section 301(a), 33 U.S.C. §1311(a) provides that "the discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the Clean Water Act.  Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to CWA Section 402, 33 U.S.C. §1342.

56.     In New York, the DEC has been delegated the authority to issue NPDES.  These state issued permits are referred to as SPDES Permits.

57.     CWA Section 502(5), 33 U.S.C. §1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

58.     CWA Section 502(12), 33 U.S.C. §1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

59.     CWA Section 502(14), 33 U.S.C. §1362(14), defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal

feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

60.    CWA Section 502(7), 33 U.S.C. §1362(7), defines "navigable waters" and "the waters of the United States, including the territorial seas."

61.    40 C.F.R. §122.2 defines "waters of the United States" to include, *inter alia*: (i) "All waters which are currently used, where used in the past, or may be susceptible to use in the interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide"; (ii) "All interstate waters, including interstate 'wetlands'"; (iii) Tributaries to such waters; (iv) Wetlands adjacent to such waters or their tributaries; and (v) "all other waters . . . the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce."

62.    Dragon Springs discharged and continues to discharge storm water from the Compound containing Fecal Coliform from point sources to the waters of the United States in excess of the permissible amount set forth in Dragon Springs' SPDES Permit.

63.    Each and every day Dragon Springs discharges storm water without authorization under its SPDES Permit is a separate and distinct violation of CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and 1342.

**SECOND CAUSE OF ACTION**
**Discharge of Wastewater: Unlawful Discharge of Pollutants**
**(Violations of CWA Sections 301 and 402, 33 U.S.C. §§1311 AND 1342)**

64.    Plaintiffs incorporate by reference all preceding paragraphs as if set forth herein.

65.    CWA Section 301(a), 33 U.S.C. §1311(a), provides that the "discharge of any pollutant" by any "person" is unlawful, unless the discharge complies with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to CWA Section 402, 33 U.S.C. §1342.

66.     Dragon Springs discharged and continues to discharge wastewater from the Compound containing Fecal Coliform from point sources to the waters of the United States in excess of the amount authorized under its SPDES Permit.

67.     Each and every day Dragon Springs discharges wastewater without authorization under its SPDES Permit is a separate and distinct violation of CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and 1342.

### THIRD CAUSE OF ACTION
### Private Nuisance

68.     Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

69.     Dragon Springs' operation of the Compound has caused the discharge of pollutants into the Basher Kill and Neversink River.

70.     Plaintiffs Robert Majcher and Grace Woodard, as property owners immediately adjacent to the Compound, have suffered injuries from the discharge of these pollutants greater than the public at large in that they are prevented from fully enjoying these waters adjacent or close to their property.

71.     Dragon Springs' discharge of the pollutants is intentional, negligent and/or reckless.

72.     Dragon Springs knew or should have known of the discharge of pollutants from the Compound.

73.     Dragon Springs' conduct constitutes a private nuisance and has proximately caused and will continue to cause harm to plaintiffs Majcher and Woodard.

74.     Plaintiffs Majcher and Woodard are entitled to damages and injunctive relief requiring, *inter alia*, Dragon Springs to abate the nuisance.

WHEREFORE, plaintiffs demand judgment against defendant:

1.    a declaratory judgment that defendant has violated and continues to violate the Clean Water Act as alleged herein;

2.    an injunction enjoining defendant from discharging pollutants from the Compound except as authorized by and in compliance with its SPDES permit;

3.    an injunction ordering defendant to take appropriate actions to remediate the harm caused by its violation of the Clean Water Act;

4.    an order and judgment against defendant for civil penalties pursuant to the Clean Water Act;

5.    an order and judgment against defendant for plaintiffs' costs of litigation, including plaintiffs' reasonable investigative costs, attorneys' fees, expert witness and consultant and other costs, pursuant to CWA §505(d), 33 U.S.C. §1365;

6.    a declaratory judgment that defendant's actions have constituted and continue to constitute a private nuisance;

7.    an injunction ordering defendant to abate the nuisance caused by defendant's actions;

8.    awarding plaintiffs Majcher and Woodard damages for the private nuisance; and

9.    such further and other relief as the Court deems appropriate.

Dated: Uniondale, New York
          June 7, 2023

RIVKIN RADLER LLP

By: */s/ E. Christopher Murray*
     E. Christopher Murray
     *Attorney for Plaintiffs*
     926 RXR Plaza
     Uniondale, New York  11556
     (516) 357-30007, 2

- 16 -