UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MID-NEW YORK ENVIRONMENTAL
AND SUSTAINABILITY PROMOTION
COMMITTEE, INC., *d/b/a*,
NYENVIRONCON, ROBERT MAJCHER,
GRACE WOODARD, *and* ALEX SCILLA,

                                Plaintiffs,

        v.

DRAGON SPRINGS BUDDHIST, INC.,

                                Defendant.

No. 23-CV-4870 (KMK)

OPINION & ORDER

Appearances:

Elizabeth S. Sy, Esq.
Christopher E. Murray, Esq.
Rivkin Radler LLP
Uniondale, NY
*Counsel for Plaintiffs*

Joshua J. Grauer, Esq.
Brendan Markham Goodhouse, Esq.
Michael Vincent Caruso, Esq.
Cuddy & Feder, LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        The Mid-New York Environmental and Sustainability Promotion Committee

("NYenvironcon"), Robert Majcher, Grace Woodard, and Alex Scilla ("Individual Plaintiffs";

collectively, "Plaintiffs") bring this Action, pursuant to 33 U.S.C. § 1365 and New York state

law, against Dragon Springs Buddhist, Inc., ("Dragons Springs" or "Defendant"), alleging

Defendant discharged Fecal Coliform into waters surrounding its property.  (*See generally* FAC

(Dkt. No. 14).)  Before the Court is Defendant's Motion To Dismiss.  (Not. of Mot. (Dkt.

No. 19).)  For the following reasons, the Motion is granted.

I.  Background

A.  Materials Considered

As an initial matter, the Court must determine whether it may consider certain exhibits

attached to Defendant's Motion, including: (1) permits issued to Defendant by the New York

State Department of Environmental Conservation ("NYSDEC"), (*see* Decl. of Joshua J. Grauer,

Esq. ("Grauer Decl."), Exs. B , C (Dkt. Nos. 20-2, 20-3.); (2) Defendant's stormwater pollution

prevention plan ("SWPP") (*see id.*, Ex. D (Dkt. No. 20-4)); (3) Plaintiffs' Notice of Intent to Sue

("NOI"), (*see id.*, Ex. E (Dkt. No. 20-5)); (3) a NOI filed in a case relied on by Defendant, (*see

id.*, Ex. G (Dkt. No. 20-7)); (4) a letter from NYSDEC to Defendant regarding the instant suit,

(*see id.*, Ex. F (Dkt. No. 20-6)); (5) several selections from webpages discussing the background

of NYenvironcon and the Individual Plaintiffs, (*id.*, Exs. H, I, J (Dkt Nos. 20-8, 20-9, 20-10));

and (6) materials issued by the Department of State and Department of Justice (*id.* Exs. K, L

(Dkt. Nos. 20-11, 20-12)).

Generally, "when considering a motion to dismiss, the Court's review is confined to the

pleadings themselves, because to go beyond the allegations in the complaint would convert the

Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to Rule 56."  *Garcia v.

Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 396 (S.D.N.Y. 2023) (alterations adopted)

(quotation marks omitted).  However, "the Court's consideration of documents attached to, or

incorporated by reference in the complaint, and matters of which judicial notice may be taken,

would not convert the motion to dismiss into one for summary judgment."  *Id.* (alteration

adopted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling

on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety, as well

2

as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (quotation marks omitted); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'") (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)). "[A] a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana Foods Inc*., No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations adopted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc*., No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

There is no real dispute that the Court can consider Defendant's Permits and Plaintiffs' NOI. Plaintiffs rely on and substantially reference each of those documents in the FAC, (*see, e.g.*, FAC ¶¶ 3, 6, 9, 44–47), and do not object to their consideration, (*see* Mem. of Law in Opp. ("Pls' Mem.") at 19 (Dkt. No. 25)). Accordingly, those documents are properly incorporated by reference. *See Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16-CV-5169, 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding documents incorporated by reference when the complaint made "direct reference" to the documents and their contents).

The Court, however, will not consider Defendant's SWPP or the NYSDEC's letter. Neither document is referenced in the FAC, and neither one—despite its official nature—appears to fit traditional categories of information subject to judicial notice like "documents retrieved from official government websites." *See Douglas v. City of Peekskill*, No. 21-CV-10644, 2023 WL 2632217, at *2 (S.D.N.Y. Mar. 24, 2023) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)).  Although Defendant argues that, to the extent it moves under 12(b)(1), extraneous documents may be considered to resolve disputed jurisdictional facts, *see Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000), it does not identify any disputes of fact for these documents to resolve, (*see generally* Mem. of Law in Supp. of Def's Mot. ("Def's Mem.") (Dkt. No. 21)).

Finally, the Court need not address the remaining exhibits attached to Defendant's Papers.  Defendant clarifies that these exhibits only "provide general background information about the parties," and they do not relate in any way to the merits of the instant Motion.  (*See* Def's Mem. 12 n.10 (discussing Exs. G–L).)

## B.  Factual Background

The following facts are drawn from the FAC and associated documents incorporated by reference and are assumed true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).  To the extent any of the documents "relied on in the [FAC] contradict[] allegations in the [FAC], the document, not the allegations, control, and the [C]ourt need not accept the allegations in the [FAC] as true." *Sander v. Enerco Grp., Inc.*, No. 21-CV-10684, 2023 WL 1779691, at *2 (S.D.N.Y. Feb. 6, 2023) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)); *Streamlined*

*Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL 4368114, at *1 n.2
(S.D.N.Y. Sept. 20, 2022) (same).

 Defendant is an organization that acts as the world headquarters of the Falun Gong
movement and hosts eight Shen Yun music and dance companies.  (FAC ¶ 1.)  It operates a
large, roughly 393-acre, compound in Deerpark, New York, comprised of numerous structures
including a school, housing, and a performing arts center.  (*Id*. ¶¶ 1–2.)  The compound also
houses a wastewater treatment plant designed to handle liquid waste generated throughout the
facility, some of which contains the bacteria Fecal Coliform.  (*Id*. ¶ 3.)

 Plaintiffs allege that there has been ongoing construction activity at the compound since
the spring of 2021.  (*Id*. ¶ 2.)  And they claim that the construction activity resulted in several
Clean Water Act ("CWA") violations involving the discharge of Fecal Coliform into surrounding
waters.  (*See, e.g.*, *id*. ¶ 5.)  On January 9, 2023, Plaintiffs provided Defendant a Notice of Intent
("NOI") to file a citizen suit concerning these violations as required by 33 U.S.C. § 1365(b).  (*Id*.
¶ 9.)

 The FAC contains more detail about the activities giving rise to this case, but the Court
focuses primarily on the NOI.  As explained in greater detail below, the information in the NOI
frames the claims the Court may consider.  Compliance with the CWA notice requirement,
including "identify[ing] the specific standard, limitation, or order alleged to have been violated,"
40 C.F.R. § 135.3(a), is a "mandatory . . . condition precedent for suit," *Hallstrom v. Tillamook
Cnty.*, 493 U.S. 20, 26 (1989).  Failure to satisfy that requirement necessitates dismissal of
claims "not properly noticed."  *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City
of New York*, 273 F.3d 481, 488 (2d Cir. 2001), *adhered to on reconsideration*, 451 F.3d 77 (2d
Cir. 2006).

The NOI starts by situating Defendant's compound, which is "located in the southern tier of Shawangunk Mountain." (NOI at 2.) The northeast side of the property has a steep slope leading from the compound to the Basher Kill and Neversink Rivers. (*Id*.) And the NOI states that the slope contains "gullies and pathways" that empty into the two rivers and constitute "point sources"—a term of art discussed infra § II.B.2. (*Id*.)

Broadly speaking, the NOI alleges that Defendant discharged wastewater and stormwater containing Fecal Coliform resulting in pollution of the two nearby rivers. But to understand the specific violation it appears to notify Defendant of, some discussion of Defendant's permits is required. In April 2020, NYSDEC issued Defendant a renewed State Pollutant Discharge Elimination System ("SPDES") Permit that, among other things, authorizes the discharge of Fecal Coliform into groundwater subject to an effluent limitation of 200 parts per 100 ml during the period between May 1 through September 30. (NOI at 3.) According to the NOI, the "SPDES Permit does not allow for the discharge of Fecal Coliform from the Compound to the surrounding surface water." (*Id*.)[1] Defendant is also subject to a Construction General Permit ("CGP"), which regulates storm water discharges. (*See id*.)

The NOI claims that "from May 1, 2021 to the present," Defendant was "in violation of its SPDES Permit by discharging Fecal Coliform through wastewater and storm water runoff from point sources at the Compound to the surrounding surface waters." (NOI at 4.) As a result, and according to several tests, the NOI states that the level of Fecal Coliform in the "surrounding waters" exceeded "the daily mean of 200 parts per 100 ml." (*Id*.)[2]

---

[1] As discussed below, this statement in the NOI is inaccurate, as the SPDES Permit contains no language regarding surface water discharges. (*See generally* SPDES Permit.)

[2] It is not entirely clear what this daily mean refers to. Defendant's SPDES Permit sets such a daily mean, but it applies to "groundwater" discharges, (*see* SPDES Permit at 2), as opposed to discharges into "surrounding [surface] water," (NOI at 4). The NOI does reference

The NOI further states that these discharges resulted from Defendant's "failure to properly maintain its wastewater treatment plant and the construction activity at the Compound." (*Id*. at 4.)  And it alleges that the discharges occurred at "point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road." (*Id*.)  It claims Defendant's CWA violations are "ongoing from the period beginning on March 12, 2021." (*Id*. at 5.)

C.  Procedural History

This is not the first time the Parties have litigated Plaintiffs' CWA claims regarding Fecal Coliform.  Judge Briccetti considered substantially similar claims in a prior action between the Parties and dismissed Plaintiffs' amended complaint for failure to comply with the CWA's notice requirement.  *See Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.* (*Dragon Springs I*), 647 F. Supp. 3d 286, 292–93 (S.D.N.Y. 2022), *appeal dismissed* (June 20, 2023).  That dismissal, however, was "without prejudice to refiling after submission of a conforming NOI letter." (*See id*. at 292 (quotation marks omitted)).

Plaintiffs commenced this Action on June 9, 2023. (*See* Compl. (Dkt. No. 1).)[3] Defendant initially sought leave to file a motion to dismiss on July 31, 2023. (*See* Dkt. No. 11.) In response, Plaintiffs filed the FAC, leading Defendant to renew its request on September 8,

---

the New York state standard for Fecal Coliform in surface water.  *See* 6 CRR-NY 703.4.  But that standard sets a "*monthly* geometric mean" of 200 parts per 100 ml, as opposed to a daily mean.  *See id.* (emphasis added).

    [3] Although Plaintiffs refiled alleging virtually identical CWA violations in the same timeframe as the prior action, they did not file a statement of relatedness or otherwise seek to have the case assigned to Judge Briccetti. (*See generally* Dkt.)  In addition to being prudent, Plaintiffs were arguably required to take one of those two steps by Local Rule 1.6, which states that "each attorney appearing in a case must bring to the attention of the [C]ourt potentially related cases" to the extent required by this District's rules for the Division of Business. Speaking of those Division of Business rules, Plaintiffs initially filed the case in Manhattan even though all Parties reside, and all events giving rise to the case occurred in, the Northern Counties. (*See* Civil Cover Sheet (Dkt. No. 3); Compl. ¶¶ 1, 14–17.)  The Court makes no findings about the reasons why Plaintiffs pursued this path, but Counsel would do well to remember those rules in future cases.

2023.  (*See* Dkt. No. 15.)  Plaintiffs responded, after which the Court held a pre-motion

conference and set a briefing schedule.  (*See* Dkt. Nos. 16–18.)  Pursuant to that schedule,

Defendant moved to dismiss on November 8, 2023.  (Not. of Mot.; Def's Mem.; Grauer Decl.)

Plaintiffs filed their Opposition on December 8, 2023, (Pls' Mem.), and Defendant replied on

December 22, 2023, (*see* Reply Mem. of Law ("Def's Reply") (Dkt. No. 26)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).

Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a

plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Daniel v. T&M Protection Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, as noted, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin*, 6 F.4th at 473 (internal quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).[4]

---

[4] Defendant also moves under Rule 12(b)(1) because it claims that some of its arguments implicate subject matter jurisdiction. (*See* Def's Mem. 10.) But it is not entirely clear that the 12(b)(1) standard applies. For context, Defendant's arguments concern the CWA's notice requirement for citizen suits, as spelled out in 33 U.S.C. § 1365(b)(1). The Supreme Court has held that similar notice requirements are "mandatory conditions precedent to commencing suit" but expressly declined to decide whether they are "jurisdictional in the strict sense of the term"— i.e., whether failure to satisfy such a requirement is a nonwaivable defense that may be raised at any time under Rule 12(b)(1). *See Hallstrom*, 493 U.S. at 31; *id.* at 23 n.1 (interpreting the Resource Conservation and Recovery Act ("RCRA") notice requirement, 42 U.S.C. § 6972(b)(1), but noting that several other statutes, including the CWA, incorporated substantially similar language); *see also Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at

B. Analysis

Defendant moves to dismiss arguing that Plaintiffs failed to provide adequate notice of their CWA claims and that, in any event, those claims are implausible. (*See generally* Def's Mem.) Plaintiffs disagree and, in the alternative, seek an opportunity to commence another action with adequate notice. (*See generally* Pls' Mem.)

### 1. The CWA Citizen Suit Notice Requirement

"The objective of [the CWA] is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further that objective, the CWA states that "the discharge of any pollutant by any person shall be unlawful" "[e]xcept as in compliance" with certain statutory provisions. *Id.* § 1311(a). One such provision establishes a "[n]ational pollutant discharge elimination system" ("NPDES"), *id.* § 1342, which authorizes states to issue permits for the discharge of pollutants into navigable waterways, *see id.* § 1342(b). New York's program of issuing permits pursuant to this CWA provision is known as the State Pollutant Discharge Elimination System ("SPDES"), *see* N.Y. Env't Conserv. Law § 17-0105(13), and it forbids the "operat[ion] and use [of] a disposal system for the discharge of

---

*2 (S.D.N.Y. Sept. 17, 2015) (noting waivable affirmative defenses are "properly raised pursuant to Rule 12(b)(6), not 12(b)(1)").

Although several cases have decided similar motions under Rule 12(b)(1), *see, e.g.*, *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 152 (S.D.N.Y. 2010) (collecting cases but declining to take a position), the Court is not aware of any binding authority on this question. More broadly, the issue seems to be the subject of a circuit split, with five circuits treating Section 1365(b)(1) as jurisdictional, and two reaching the opposite conclusion. *See Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 72 (1st Cir. 2021) (collecting cases); *cf. Conservation Soc. of S. Vt., Inc. v. Sec'y of Transp.*, 508 F.2d 927, 938–39 & n.62 (2d Cir. 1974) (stating in dicta that Section 1365 did not present "an absolute barrier" to suit but "[a]ssuming arguendo that the district court had jurisdiction"), *vacated on other grounds sub nom. Coleman v. Conservation Soc. of S. Vt., Inc*., 423 U.S. 809 (1975). The Court takes no position on the issue here, however, as the defense has not been waived and the Motion would come out the same way under either Rule 12 standard.

sewage, industrial waste, or other wastes or the effluent therefrom, into the waters of the state," except in conformity with an SPDES permit, *id.* § 17-0701(1)(b).

In addition to enforcement by government agencies, the CWA allows for enforcement by private citizens via citizen suits in federal district court. *See* 33 U.S.C. § 1365(a). "[A]ny citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." *Id.* § 1365(a)(1). However, no such action may be initiated "prior to sixty days after the plaintiff has given notice of the alleged violation . . . to any alleged violator of the standard, limitation, or order" and to federal and state authorities. *Id.* § 1365(b)(1)(A).

Strict compliance with this "notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom,* 493 U.S. at 26; *see also Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, No. 20-CV-1025, 2024 WL 779384, at *4 (N.D.N.Y. Feb. 26, 2024) (same); *Dragon Springs I,* 647 F. Supp. 3d at 292 n.6 (same); *see also Sarna,* 690 F. Supp. 2d at 152–53 (applying *Hallstrom* to the CWA notice requirement); *Klebe v. Tri Mun. Sewer Comm'n,* No. 07-CV-7071, 2008 WL 5245963, at *4 (S.D.N.Y. Dec. 17, 2008) (same); *City of New York v. Anglebrook Ltd. P'ship,* 891 F. Supp. 900, 906 (S.D.N.Y. 1995) (same). Such notice allows for the alleged violator to comply with the CWA, or for a government agency to attempt to bring the violator into compliance. *See Hallstrom,* 493 U.S. at 29. The minimum requirements for Section 1365 notice are set out in Environmental Protection Agency ("EPA") regulations, which provide that:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons

responsible for the alleged violation, the location of the alleged violation, the date
or dates of such violation, and the full name, address, and telephone number of the
person giving notice.

40 C.F.R. § 135.3(a); *see Sarna*, 690 F. Supp. 2d at 147 (same); *see also* 33 U.S.C. § 1365(b)(2)

("Notice under this subsection shall be given in such manner as the Administrator shall prescribe

by regulation.").

"In practical terms, the notice must be sufficiently specific to inform the alleged violator

about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."

*Catskill Mountains*, 273 F.3d at 488 (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting

Co.*, 116 F.3d 814, 819–20 (7th Cir.1997)).  The Second Circuit has clarified, however, that

courts should not "'allow form to prevail over substance' in considering the content required of

an NOI letter"; instead, they should look "to what the particular notice given may reasonably be

expected to accomplish" under the circumstances.  *Id*. (quoting *Dague v. City of Burlington*, 935

F.2d 1343, 1354 (2d Cir.1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992)).

### 2.  Plaintiffs' NOI

Defendant contends that the NOI is riddled with deficiencies, and while the Court finds

them all compelling, it need only address some of them below.  The upshot is that, as before,

Plaintiffs' NOI is deficient because it "lacks sufficient information to enable [D]efendant to

identify [any] alleged violations."  *See Dragon Springs I*, 647 F. Supp. 3d at 291.

To start, the violation alleged on the face of the NOI is illogical.  The NOI begins by

recognizing that Defendant's SPDES Permit authorizes the discharge of wastewater containing

Fecal Coliform into ground water, subject to an effluent limitation of 200 parts per 100ml.  (NOI

at 3.)  The NOI's clearest statement of a violation is that:

From May 1, 2021 to the present, Dragon Springs is in violation of its SPDES
Permit by discharging Fecal Coliform through wastewater and storm water runoff
from point sources at the Compound to the surrounding surface waters.  Further, as

> a result of the discharge by Dragon Springs the level of Fecal Coliform in the
> surface water adjacent to Dragon Springs' compound is far in excess than the daily
> mean of 200 parts per 100 ml.

(NOI at 3–4.)  Tabling for now whether that paragraph is sufficiently specific, it gestures at one distinct type of legal theory: that Defendant discharged compounds "in excess of [some] NPDES permit limitation[]"—here, a limit on surface water discharges.  *See Catskill Mountains* 273 F.3d at 487; (*See* FAC ¶ 64 ("Dragon Springs discharged . . . Fecal Coliform from point sources to waters of the United States in excess of the permissible amount set forth in Dragon Springs' SPDES Permit.").)  Defendant, however, points out a severe problem with this theory: neither permit actually prohibits surface water discharges of Fecal Coliform.  (Def's Mem. 6, 13–15 & n.11; Def's Reply 1–2.)  As for wastewater, the SPDES Permit does not contain any limitation on such discharges.  (*See generally* SPDES Permit.)  And for stormwater, the CGP expressly "authorizes stormwater discharges to surface waters of the State" subject to certain conditions. (*See* CGP § I.A. (emphasis omitted).)  It is true that in the *absence* of a permit, the CWA's general proscription on discharging pollutants applies.  *See* 33 U.S.C. § 1311(a).  But it is something of an oxymoron to suggest that Defendant violated its *permits* by discharging Fecal Coliform into surface waters.

It follows that the NOI does not adequately notice a violation of one of Defendant's permits.  Similar cases consistently hold that the NOI must "identify the *specific* standard [or] limitation" in the permit "alleged to have been violated."  *See, e.g.*, *Dragon Springs I*, 647 F. Supp. 3d at 291 (emphasis in original) (quoting *Karr v. Hefner*, 475 F.3d 1192, 1203 (10th Cir. 2007)).  Perhaps because no such provisions exist to support this theory, Plaintiffs do not provide a specific provision Defendant is alleged to have violated.  The only one the NOI mentions is the SPDES Permit's effluent limitation on groundwater discharges of Fecal Coliform.  (*See* NOI at 2; SPDES Permit at 3.)  But the NOI notably does not allege illegal groundwater discharges or

that groundwater discharges somehow migrated into surface water.[5]  It thus fails to adequately

notice any theory that Defendant violated its permits.  *See Nat'l Parks & Conservation Ass'n v.*

*Tenn. Valley Auth.*, 502 F.3d 1316, 1330 (11th Cir.2007) (rejecting as insufficient an NOI letter

that "broadly alleged" that a facility "violated 'all of the requirements'" of a permit); *Pub.*

*Interest Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir.1995)

(interpreting notice regulation to require plaintiff "to identify the specific effluent discharge

limitation which has been violated"); *CARS*, 2005 WL 3534178, at *7 ("Simply stating that the

Non-Federal Defendants 'have failed to conform' to the SPDES permit without describing the

manner in which they have failed does not place the Non-Federal Defendants on notice.").[6]

  Perhaps recognizing that the NOI's stated legal theory faced an uphill battle, Plaintiff

posits a different one in its Opposition brief.  Instead of claiming that Defendant was "*in*

---

  [5] Although Plaintiffs do not allege a discrete violation on this basis, the Court notes that the NOI references the New York State water quality standard for coliforms, 6 CRR-NY 703.4, and asserts that Defendant's permit violation resulted in elevated levels of Fecal Coliform "in the surrounding waters."  (*See* NOI at 3–4.)  Assuming this portion of the NOI notices a discrete violation—again, which Plaintiffs do not claim—it would still be deficient.  The NOI offers no detail whatsoever about what, or where, these "surrounding waters" are, sufficient to allow Defendant to cure an alleged violation.  That type of generalized reference is insufficient for purposes of 40 C.F.R. § 135.3(a), as Defendant could "hardly have guessed" what Plaintiffs were referring to.  *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802 & n.11 (9th Cir. 2009) (holding dismissal was appropriate where NOI made a general reference to wetlands but did not "give any detail whatsoever regarding just what 'wetlands' were allegedly being affected or how"); *CARS (Citizens Against Retail Sprawl) v. U.S. Army Corps of Eng'rs*, No. 04-CV-328E, 2005 WL 3534178, at *7 (W.D.N.Y. Dec.23, 2005) (dismissing claim where NOI "d[id] not state the waters into which the alleged stormwater is being discharged").

  [6] Plaintiffs also repeatedly reference tests measuring elevated levels of Fecal Coliform in waters surrounding Defendant's compound.  (*See, e.g.*, Pls' Mem. 1, 7; Letter from E. Christopher Murray, Esq., to Court (July 17, 2024) (Dkt. No. 27).)  Yet, they never explain why these tests necessarily establish "improper discharges" by Defendant.  (*See* Pls' Mem. 13.)  More to the point, the tests provide no indication of what Defendant "is doing wrong" or what "corrective actions" it should take to comply with the CWA.  *See Catskill Mountains*, 273 F.3d at 488.

*violation of* its SPDES Permit," (Pls' Mem. 6 (emphasis added)), Plaintiffs claim that Defendant

discharged Fecal Coliform directly into surface water *without* a permit, (*see id.* at 9, 12, 13; NOI

at 3 ("Dragon Springs does not have any other permit authorizing such discharges [into surface

water]").)  While it may seem like a matter of semantics, this way of framing the NOI presents a

distinct legal theory.  Put simply, Plaintiffs first claimed that Defendant engaged in an authorized

activity but did so in violation of an applicable permit limitation.  *See Catskill Mountains* 273

F.3d at 487.  By contrast, this second theory says that Defendant engaged in a separate

unauthorized activity for which it "failed altogether to obtain a permit."  *See Catskill Mountains*

273 F.3d at 488 (characterizing this type of claim as one "based on unpermitted discharges").

Following that second view, Plaintiffs now argue that "the violation of the CWA is that Fecal

Coliform is being discharged into the surface water without a permit."  (*See* Pls' Mem. 9, 11,

12.)  But Plaintiffs' present clarity makes their earlier ambiguity all the more apparent.  If its

intent was so clear at the time, why did the NOI only state that Defendant acted "in violation *of*

*its SPDES Permit*"?  (*See* NOI at 3 (emphasis added).)  That language, coupled with the NOI's

reference to the SPDES Permit's effluent limitation, could reasonably lead a party to believe the

NOI was related the permit, not to something else.  (*See* Def's Reply 4.)  Plaintiffs, moreover, do

not explain how Defendant was supposed to parse these potential theories to reach its desired

interpretation.  Indeed, when confronted with this ambiguity, Plaintiffs simply recite their new

theory instead of explaining why the NOI was specific and clear as written.  (*See* Pls' Mem. 12–

13.)

　　　　Plaintiffs' attempt to rely on a theory not clearly stated in the NOI is sufficient reason to

dismiss.  Almost by definition, an NOI that does not state a given theory on its face cannot

"identify the specific standard, limitation or order [in its permit] alleged to have been violated."

*See* 40 C.F.R. § 135.3(a).  Courts have thus held NOIs insufficient where they "left [d]efendants guessing as to the claimed violation," *Shark River Cleanup Coalition v. Twp. of Wall*, 47 F.4th 126, 136 (3d Cir. 2022), or forced defendants to "speculate as to all possible attacks on [their] NPDES permit," *ONRC Action v. Columbia Plywood, Inc*., 286 F.3d 1137, 1143 (9th Cir. 2002); *see also Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 766 n. 12 (S.D. Ohio 2003) (rejecting plaintiffs' claim that general notice of violation was sufficient because defendants "must have known the ways in which they violated their permits").  And that desire for certainty makes good sense in light of the notice requirement's purpose.  Indeed, "[w]ere [the Court] to exercise jurisdiction over [] claims when they were not disclosed by the citizen suit notice, [it] would usurp the right of the applicable government agencies to evaluate and act upon the merits of the claims prior to judicial review."  *See Ctr. For Biological Diversity*, 566 F.3d at 802 (quoting *ONRC Action*, 286 F.3d at 1144).  Further, that type of vague notice is unfair to the alleged violator.  A recipient of an NOI alleging a permit violation reasonably responds by assessing compliance with the conditions in that permit.  What a defendant may not think to do in response to that NOI is to examine whether there are other proscribed discharges on its property unrelated to its permitted activities.  In other words, the defendant in that scenario has not received "the opportunity to bring itself into compliance" with the CWA that Section 1365 requires.  *See Hallstrom*, 493 U.S. at 26.

Even assuming the NOI identified this new theory, it would still be insufficient for another, independent reason.  In order to notice a discharge violation, an NOI must "identify[] a point source," *Karr*, 475 F.3d at 1203, which refers to generally to "physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways," *United States v. Plaza Health Labs., Inc*., 3 F.3d 643, 646 (2d

Cir. 1993); *see also* 33 U.S.C. § 1362(14) (defining "point source" as "any discernible, confined and discrete conveyance" including, inter alia, "any pipe, ditch, channel, tunnel, conduit, well . . . or vessel" from which pollutants may be discharged); *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 219 (2d Cir. 2009) (noting that "point source" is "to be broadly interpreted" (quotation marks omitted)).  While that term has a wide sweep, it requires "[a]t its core . . . some facility" that "functions as a discrete, not generalized, conveyance." *Sierra Club v. Va. Elec. & Power Co.*, 903 F.3d 403, 410 (4th Cir. 2018) (quotation marks omitted).  The NOI's first crack at identifying a point source is a statement that there is a "steep slope" "on the northeast side" of Defendant's property containing "gullies and pathways from the Compound" that empty into the "Basher Kill and Neversink River."  (NOI at 2.)  Yet it is not entirely clear whether these gullies and pathways are point sources, as the NOI never states that they are a place "from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).[7] Later on, when the NOI does reference discharges, it states that Defendant discharged pollutants "through point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States."  (NOI at 4.)[8]  It is anyone's guess whether the "steep slope" on the northeast side of the property and the area "southwest of the bridge" refer to the same place.  But in either event, these statements—which simply identify areas of land marked by certain features—do not come close to identifying a "discernible, confined and discrete

---

[7] The Court views Defendant's characterization of the NOI as apt: although the NOI identifies "the endpoint where . . . pollutants enter waterways," the NOI does not appear to allege "a conveyance of stormwater or wastewater" from Defendant's facilities to that location.  (*See* Def's Mem. 20 n.16.)

[8] Plaintiffs use the same language to describe point sources for Defendant's alleged stormwater and wastewater discharges.  (*See* NOI at 4.)

conveyance" as required by 33 U.S.C. § 1362(14).  Indeed, Judge Briccetti held that virtually

identical language failed to "identify the point source from which water is being discharged."

*See Dragon Springs I*, 647 F. Supp. 3d at 292.  And that holding is of a piece with the broader

principle that identifying "the location of the alleged violations, rather than specific outfalls, does

not amount to identifying the 'point sources' where the alleged violations occurred."

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 621–22

(D. Md. 2011); *cf. Env't Prot. Info. Ctr. v. Pac. Lumber Co*., 430 F. Supp. 2d 996, 1011 (N.D.

Cal. 2006) (stating that a NOI failed to "identif[y] any discrete point source" where it did not

point to "culverts, ditches or conduits from which storm water or pollutants [were] discharged").

Plaintiffs resist, pointing out that they "need not identify every specific discharge point at

a facility" in its NOI.  (*See* Pls' Mem. 11 (quoting *Puget Soundkeeper All. v. Cruise Terminals of

Am., LLC*, 216 F. Supp. 3d 1198, 1210 (W.D. Wash. 2015)); *see also id*. at 15 (citing additional

cases).)  But Plaintiffs' cited cases still recognize that "the crux of proper notice" is whether a

NOI "sufficiently inform[s]" a defendant so they can remedy the alleged violation.  *See Puget

Soundkeeper All.*, 216 F. Supp. 3d at 1210.  That can hardly be said to describe the NOI here,

which alerts Defendant to discharges in an area that may be multiple acres in size.[9]  Each one of

---

[9] Plaintiffs' lack of "access to the buildings involved," (*see* Pls' Mem. 15), does not
"absolve[e] [them] of the need to plead this key element."  *See Riverkeeper, Inc. v. Hudson
Wholesalers Rest. Equip*., No. 22-CV-564, 2023 WL 6122850, at *11 (N.D.N.Y. Sept. 19, 2023).
Although cases have understandably held that plaintiffs need not state the location each source of
pollution where they lack access to the relevant area, they must still provide enough
information—at least a specific example—to give sufficient notice.  Plaintiffs' supporting case
illustrates the point.  (*See* Pls' Mem. 15.)  There, a plaintiff organization stated that "light ballasts
of specific types of lights" were a point source of PCB pollution in New York City schools. *See
New York Cmtys. for Change v. New York City Dep't of Educ*., No. 11-CV-3494, 2012 WL
7807955, at *11 (E.D.N.Y. Aug. 29, 2012) *report and recommendation adopted*, 2013 WL
1232420 (E.D.N.Y. Mar. 26, 2013).  The court rejected the notion that the organization had to
access each school to identify "each and every leaking PCB ballast," because its rather specific
point source description was enough for the defendant to "identify the problem."  *See id*.  By

those cases also speaks at a much higher level of specificity than Plaintiffs offer here.  Just as an

example, "drainage points in the cruise terminal that are near areas where mobile fueling and

other maintenance activities occur," does quite a bit more for a defendant than gullies on a steep

slope.  *See id*. (quotation marks omitted).  And other cases cited by Plaintiffs reinforce that

distinction.  *See Ecological Rts. Found. v. Pac. Gas & Elec. Co*., No. 09-CV-3704, 2010 WL

1881595, at *1 (N.D. Cal. May 10, 2010) (plaintiff alleged that PG&E utility poles were treated

with toxic chemicals and identified "fifty-three poles that allegedly violate the CWA and

RCRA"); *Pinoleville Pomo Nation v. Ukiah Auto Dismantlers*, No. 07-CV-2648, 2007 WL

4259404, at *4 (N.D. Cal. Dec. 3, 2007) (finding NOI adequately identified point source where it

"describe[d] the equipment used by defendants, as well as the defendants' facilities

themselves").[10]  Thus, while there may be some wiggle room in terms of the exact level of

specificity required to identify a point source, the NOI comes nowhere close to it.

    For all those reasons, Plaintiffs have "failed to comply with the CWA's notice

requirement" and the Amended Complaint "must be dismissed."  *Dragon Springs I*, 647

F. Supp. 3d at 292; *U.S. E.P.A. ex rel. McKeown v. Port Auth. of New York & New Jersey*, 162 F.

Supp. 2d 173, 186 (S.D.N.Y. 2001) (dismissing CWA claims for insufficient notice where the

NOI did not identify "any specific effluent standards defendants allegedly violated under the

---

comparison, Plaintiffs' NOI fails to allege a specific outfall or any other discrete instrumentality
conveying Fecal Coliform to nearby waters.

    [10] Plaintiffs also cite the Eighth Circuit's decision in *City of Kennett v. Environmental
Protection Agency*, 887 F.3d 424, 428 (8th Cir. 2018), which held that a water treatment plant
qualified as a point source under 33 U.S.C. § 1362(14).  (*See* Pls' Mem. 15.)  *City of Kennett*,
however, did not arise out of a citizen suit and thus did not consider the degree of specificity
needed to identify a point source in a NOI.  *See generally* 887 F.3d 424.  Of course, the NOI here
does not identify anything akin to a particular facility at Defendant's compound, or any source of
pollution from the compound for that matter.

CWA"), *aff'd sub nom. McKeown v. Delaware Bridge Auth*., 23 F. App'x 81 (2d Cir. 2001); *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc*., 891 F. Supp. 152, 154 (S.D.N.Y. 1995) (dismissing CWA claim where, for several reasons, the plaintiff failed to "satisfy the content requirements specified in 40 C.F.R. § 135.3(a)").[11]

Defendant contends that this dismissal should be with prejudice, (Def's Mem. 24), and the Court agrees.  As Defendant points out, this is Plaintiffs' second Action and fourth attempt to state a CWA claim arising out of the same alleged discharges.  But despite repeated notice regarding inadequacies in their NOIs, Plaintiffs have once again come up short, having failed to address the deficiencies Judge Briccetti identified in the prior action.  *See Dragon Springs I*, 647 F. Supp. 3d at 292 (dismissing Plaintiffs' amended complaint).  Although first-time inadequate notice dismissals are typically "without prejudice to refiling after full compliance" with the CWA notice requirement, *see id*.; *Klebe*, 2008 WL 5245963, at *6 (same); *Catskill Mountains*, 273 F.3d at 489 (same), the Court is not aware of any case holding that Plaintiffs can keep throwing NOIs at the wall until one sticks.  Courts do, however, "routinely deny" a "third bite at the apple," which is what Plaintiffs effectively seek in a third action regarding the same claims. *See Goldrich v. Watkins Wellness*, No. 22-CV-3769, 2024 WL 1194716, at *7 (S.D.N.Y. Mar. 20, 2024); *Binn v. Bernstein*, No. 19-CV-6122, 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases) (same), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *see also Kamdem-Ouaffo v. Pepsico, Inc*., 160 F. Supp. 553, 574

---

[11] The Court finds compelling, but need not consider, Defendant's additional argument that the NOI does not adequately identify the activity alleged to constitute a CWA violation. (*See* Def's Mem. 15–18 (citing *Karr*, 475 F.3d at 1201–03 & n.3 (finding the phrase "continuing construction activities" "fail[ed] to specify the activities that constituted the alleged violations" and stating that language was "hardly more helpful than a letter telling [the d]efendants merely that they ha[d] violated the CWA at each listed well site")).)

n.28 (S.D.N.Y. 2016) ("[T]he [c]ourt has given [p]laintiff two bites at the apple, and there is no

need for a third bite."); *cf. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d

243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint

when he first amended, he clearly has no right to a second amendment even if the proposed

second amended complaint in fact cures the defects of the first.  Simply put, a busy district court

need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration

adopted) (footnote and quotation marks omitted)).

### 3.  State Law Claims

Plaintiffs also allege a state law nuisance claim regarding the same conduct.  (FAC

¶¶ 70–76.)  Because the Court dismisses Plaintiffs' CWA claims, it declines to exercise

supplemental jurisdiction over this state law claim.  *See* 28 U.S.C. § 1367(c)(3) ("District courts

may decline to exercise supplemental jurisdiction over a claim . . . if the district court has

dismissed all claims over which it has original jurisdiction . . . .").  "In the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

toward declining to exercise jurisdiction over the remaining state-law claims."  *Lara-Grimaldi v.*

*County of Putnam*, No. 17-CV-622, 2022 WL 17541815, at *4 (S.D.N.Y. Dec. 6, 2022)

(alteration adopted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs.*

*Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)); *see also One*

*Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order)

("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to

decline to assert supplemental jurisdiction over any state law claims . . . .").

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted and the Action is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 19), and to close the case.

SO ORDERED.

Dated:    September 11, 2024
            White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge