UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X   Case No.: 7:23-cv-04870-KMK
MID-NEW YORK ENVIRONMENTAL AND
SUSTAINABILITY PROMOTION COMMITTEE,
INC. (d/b/a NYENVIRONCOM); ROBERT
MAJCHER; GRACE WOODARD; and
ALEX SCILLA,

                               Plaintiffs,

            -against-

DRAGON SPRINGS BUDDHIST, INC.,

                               Defendant.
---------------------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM OF LAW
# IN RESPONSE TO
# DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION
# TO DISMISS

RIVKIN RADLER LLP
*Attorneys for Plaintiffs*

E. Christopher Murray
Elizabeth S. Sy
926 RXR Plaza
Uniondale, New York 11556
Tel: (516) 357-3242
Fax: (516) 357-3333
E.Murray@rivkin.com
Elizabeth.Sy@rivkin.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    The Second Circuit Held the NOI Sets Forth The Same Violations as Set Forth in the Amended Complaint ............................................................ 2

    II.    Plaintiffs Adequately Plead Unpermitted Stormwater Discharges ................... 4

    III.    Plaintiffs Adequately Plead Unpermitted Wastewater Discharges ................... 6

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albahary v. City and Town of Bristol*,
   963 F. Supp. 150 (D. Conn. 1997) ........................................................................................... 7

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*,
   273 F.3d 481 (2d Cir. 2001) ................................................................................................. 2, 3

*Mid-New York Environmental & Sustainability Promotion Committee., Inc. v. Dragon Springs Buddhist, Inc..*,
   152 F.4th 413 (2d Cir. 2025) ............................................................................................ 2, 3, 7

*Riverkeeper, Inc. v. Hudson Wholesalers Rest. Equip.*,
   No. 1:22-cv-00564, 2023 WL 6122850 (N.D.N.Y. Sept. 19, 2023) ......................................... 8

*San Francisco v. EPA*,
   604 U.S. 334 (2025) .............................................................................................................. 7, 8

**STATUTES**

Clean Water Act .............................................................................................................................. 1

Clean Water Act Section 402, 33 U.S.C. §1342 ............................................................................. 3

Clean Water Act , 33 U.S.C. § 1362(6) ........................................................................................... 6

**OTHER AUTHORITIES**

Fed.R.Civ.P. 8 .................................................................................................................................. 7

Rule 12 ............................................................................................................................................. 8

Plaintiffs Mid-New York Environmental and Sustainability Promotion Committee, Inc. d/b/a NYEnvironcom ("NYEnvironcom"), Robert Majcher ("Robert"), Grace Woodard ("Grace") and Alex Scilla ("Alex") (collectively, "Plaintiffs") submit this memorandum of law in response to defendant Dragon Springs Buddhist, Inc.'s ("Dragon Springs" or "Defendant") supplemental memorandum of law in further support of its motion to dismiss the Amended Complaint ("Amended Complaint").

## PRELIMINARY STATEMENT

This action was initiated because Dragon Springs was discharging the pollutant Fecal Coliform into the Basha Kill and Neversink River without a permit in violation of the Clean Water Act which expressly prohibits the discharge of pollutants without a permit. As set forth in the Amended Complaint, immediately upstream from Dragon Springs compound the levels of Fecal Coliform are well below the standards required by New York State, but immediately adjacent to the hill running down from Dragon Springs' property to the subject waters the Fecal Coliform levels skyrockets. There is no other possible source in this rural area for the extremely high levels of Fecal Coliform found in the waters immediately adjacent to Dragon Springs' property. As for Dragon Spring's assertions in its Supplemental Memorandum of Law, they are meritless.

For example, and as fully set forth below, Dragon Springs asserts that the claims alleged in the Amended Complaint are not the same as alleged in the Notice of Intent to Sue ("NOI"). However, as the Second Circuit squarely held that both the NOI and the Amended Complaint allege that Dragon Springs' was discharging Fecal Coliform to surface water without a permit. Similarly meritless is Dragon Springs' argument that it was permitted to discharge Fecal Coliform under the General Construction Permit ("GCP") applicable to all construction projects in New York State. As set forth below, the GCP contains no such authorization and there is a specific SPDES permit expressly prohibiting the discharge of Fecal Coliform into surface waters. And, as

1

for the argument that the claim of wastewater discharge is not plausible, there are years of testing of the waters immediately adjacent Dragon Springs' property which showed elevated levels of Fecal Coliform when the elevated levels were not found immediately upstream, and there is no other source of this pollutant.

Accepting the allegations of the Amended Complaint as true, Plaintiffs plausibly allege Dragon Springs' ongoing, unpermitted discharges of Fecal Coliform into surface waters through stormwater runoff and wastewater discharge originating from its property. As set forth more fully below, the Amended Complaint is factually pled with the requisite specificity and Dragon Springs' motion to dismiss should be denied.

## ARGUMENT

### I. The Second Circuit Held the NOI Sets Forth The Same Violations as Set Forth in the Amended Complaint

Dragon Springs' contention that the Amended Complaint must be dismissed because it purportedly alleges claims different from those noticed in the NOI is without merit, and misapplies the Second Circuit's holdings in *Mid-New York Environmental & Sustainability Promotion Committee., Inc. v. Dragon Springs Buddhist, Inc..*, 152 F.4th 413 (2d Cir. 2025) and *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 488 (2d Cir. 2001). Critically, the Second Circuit already held that "Plaintiffs' NOI provides sufficient notice to Dragon Springs of the substance of Plaintiffs' claims" and "the allegations in Plaintiffs' NOI closely mirror the allegations ultimately raised in their complaint." Mid-New York, 152 F.4th at 424, 426.

Consistent with the Second Circuit's holding, the Amended Complaint alleges that Dragon Springs discharged Fecal Coliform to surface waters without authorization under any permit, in violation of the CWA. *See* ECF No. 20-1, ¶ 45 ("Dragon Springs' SPDES Permit does not allow

for the discharge of Fecal Coliform from the Compound to the surrounding surface water."); ¶ 47 ("the Construction General Permit does not permit the discharge of Fecal Coliform into the surface waters adjacent to the Compound"); ¶ 53 ("Dragon Springs' SPDES Permit and General Construction Permit do not allow for the discharge of Fecal Coliform to surface water"); ¶ 57 ("Section 301(a) prohibits discharges not authorized by a valid NPDES permit issued pursuant to CWA Section 402, 33 U.S.C. §1342"). These allegations state an unpermitted discharge claim under the CWA. *See Catskill*, 273 F.3d at 488 ("to state a claim based on unpermitted discharges, the plaintiff must allege some pollutant that was discharged without a permit"). Defendant's reliance on isolated references in the Amended Complaint to discharges "in excess of the permissible amount set forth in Dragon Springs' SPDES Permit" does not compel a contrary conclusion because Dragon Springs' SPDES Permit does not authorize any permissible amount of Fecal Coliform to be discharged to surface waters. Such Permit only allows the discharge of Fecal Coliform into an underground septic and leach field system.

The Amended Complaint aligns with the claims in the NOI, and the Second Circuit has already deemed those claims as adequately noticed:

> Plaintiffs' NOI was clear as to the offending activity and standards allegedly violated: Dragon Springs discharged stormwater and wastewater containing Fecal Coliform into nearby surface water in quantities exceeding 200 parts per 100 ml as a result of its "failure to properly maintain its waste water treatment plant and the construction activity at the [Property]." . . . It allegedly did so without a permit, which would violate §§ 301(a) and 402 of the CWA.

*Mid-New York*, 152 F.4th 413 at 425-426.

As for Dragon Springs' citation to *Catskill*, 273 F.3d at 488 the Second Circuit in that case held that "the NOI letter must specify each pollutant unlawfully discharged that will be alleged in a subsequent complaint." *Catskill*, 273 F.3d at 488. *Catskill* does not require the NOI to mirror the

3

underlying complaint verbatim. There is no dispute that the pollutant at issue in this case is Fecal Coliform, which is mentioned numerous times in both the NOI and Amended Complaint. *See generally* ECF No. 20-5 (NOI); No. 20-1 (Amended Complaint).

Accordingly, the NOI was sufficient and the claims set forth in the NOI are the same as in the Amended Complaint.

II.   **Plaintiffs Adequately Plead Unpermitted Stormwater Discharges**

Dragon Springs contends that Plaintiffs' stormwater discharge violation claim fails because Dragon Springs operated under a valid CGP which authorizes the discharge of Fecal Coliform to surface waters. This is simply not true. Nothing in the CGP allows or permits the discharge of pollutants generally, let alone Fecal Coliform specifically. Yet, Dragon Springs asserts that since stormwater discharge is "presumed" to carry pollutants, then the GCP authorizes the discharge of Fecal Coliform. This is simply made up and no authority is offered by Dragon Springs to support this argument. Dragon Springs' Br. at p. 2-3.

The absurdity of this argument is also demonstrated by its logical conclusion that any construction project in the state is authorized to discharge any pollutants as long as its follows the process set forth in the GCP. The GCP does not so provide. Further, the undisputed fact is that Dragon Springs has a specific SPDES permit covering the discharge of Fecal Coliform, i.e. it is only permitted into subsurface water not surface water.

Read as a whole, the Amended Complaint plausibly alleges that Dragon Springs discharges fecal coliform to surface waters without authorization under any permit. While the Amended Complaint references Dragon Springs' permits, it does so to demonstrate their limits – namely that neither the SPDES permit nor the CGP authorizes discharges of Fecal Coliform to surface waters or discharges that exceed the 200 parts per 100 ml limit set forth in 6 CRR-NY 703.4. *See* ECF

No. 20-1, ¶¶ 34-52. Discharges that fall outside of the scope of permit authorization are unpermitted as a matter of law, and Plaintiffs have satisfied their pleading burden here.

Further, while the CGP authorizes certain stormwater discharges, it does not provide blanket authorization for the discharge of Fecal Coliform from construction sites. Rather, it authorizes stormwater discharges only to the extent that such discharges do not cause or contribute to violations of applicable water quality standards. The CGP's Coverage section states:

> This permit authorizes stormwater discharges to surface waters of the State from the following construction activities identified within 40 CFR Parts 122.26(b)(14)(x), 122.26(b)(15)(i), and 122.26(b)(15)(ii), provided eligibility provisions of this permit are met.

ECF No. 20-3, p. 1. Part 1.E authorizes "discharges of stormwater from construction activity to surface waters of the State and groundwaters except for ineligible discharges identified in subparagraph F. of this Part." *Id.* at p. 9. Subparagraph F prohibits various activities under the CGP, including, among others, "[d]ischarges that are required to obtain an individual SPDES permit or another SPDES general permit" and "[d]ischarges which either cause or contribute to a violation of water quality standards adopted pursuant to the ECL and its accompanying regulations". *Id.*

Notably, Part I.D. "Maintaining Water Quality" provides that it is a violation of the ECL for any discharge "to either cause or contribute to a violation of water quality standards as contained in Parts 700 through 705 of Title 6 of the Official Compilation of Codes, Rules and Regulations of the State of New York". *Id.* at p. 8. Where there is evidence that stormwater discharges authorized by the permit "are causing, have the reasonable potential to cause, or are contributing to a violation of water quality standards," the permittee must take corrective action and may be required to modify controls, supplement information, or obtain an individual SPDES

permit. *Id.* If, despite compliance efforts, discharges are causing or contributing to a violation, "the authorized discharges will no longer be eligible for coverage," and the Department may require an individual SPDES permit to continue discharging. *Id.*

Contrary to Dragon Springs' contention, the above-referenced provisions of the CGP demonstrate that the CGP authorizes stormwater discharges, subject to compliance with permit conditions, water quality standards, and effluent limitations. The permit does not grant broad permission to discharge all pollutants potentially present in stormwater.

Moreover, Dragon Springs' assertion that the "CGP does not identify . . . the discharge of any specific pollutant" only confirms that the GCP does not authorize the discharge of any specific pollutant. Further, "[d]ischarge" is defined in the CGP as "any addition of any pollutant to water of the State through an outlet or point source." ECF 20-3 at p. 41. "Pollutant" is defined as

> dredged spoil, filter backwash, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand and industrial, municipal, agricultural waste and ballast discharged into water; which may cause or might reasonably be expected to cause pollution of the waters of the state in contravention of the standards or guidance values adopted as provided in 6 NYCRR Parts 700 et seq .

*Id.* at p. 43. This definition largely tracks the CWA's definition of "pollutant", *see* 33 U.S.C. § 1362(6), and includes "sewage" and "biological materials."

Accordingly, Plaintiffs adequately plead unpermitted stormwater discharges.

### III. Plaintiffs Adequately Plead Unpermitted Wastewater Discharges

Dragon Springs argues that Plaintiffs' wastewater claim fails because Plaintiffs rely on downstream water-quality data and speculation; Plaintiffs do not identify a discrete conveyance that constitutes a point source; and allegations regarding water testing fail to state a claim for a CWA violation. In support, Dragon Springs relies heavily on cases outside of the Second Circuit,

6

to impose an improper evidentiary standard, as well as the Supreme Court's holding in *San Francisco v. EPA*, 604 U.S. 334 (2025), which Defendant characterizes as foreclosing CWA liability basely water quality conditions. Dragon Springs' arguments fail for the following reasons.

First, Plaintiffs may plausibly allege unlawful discharges through factual allegations of proximity, control, and repeated downstream exceedances, without tracing pathways with scientific precision at the pleading stage. Dragon Springs' demand for technical proof of causation improperly seeks summary-judgment-level evidence at the motion-to-dismiss stage. For example, in *Albahary v. City and Town of Bristol*, 963 F. Supp. 150 (D. Conn. 1997), the District Court of Connecticut held that allegations of groundwater pollution creating "a plume of contamination that passes through plaintiffs' land and discharges into the Eight Mile River" and then "passes through point sources such as roadway culverts further downstream" sufficiently alleged a CWA violation to overcome a motion to dismiss. *Albahary*, 963 F. Supp. at 153. The court acknowledged that "a more complete factual record is necessary in order to determine the proximity of the landfill to the Eight Mile River, and [sic] well as the locations of the 'roadway culverts further downstream,'" but concluded that "under the liberal pleading standards of Fed.R.Civ.P. 8," the allegations were sufficient. *Id.*

Second, Plaintiffs clearly identify the point sources as "gullies and pathways" on a steep slope from the northeast side of "the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road," which empty into the Basher Kill and Neversink River. *See* ECF No. 20-1, ¶¶ 4, 53. The Second Circuit already held that "Plaintiffs identified exactly where the Fecal Coliform was escaping the Property, thereby providing sufficient information to allow Dragon Springs to identify its own violations and bring itself into compliance voluntarily." *Mid-New York*, 152 F.4th at 427 (internal quotations omitted). The Second Circuit further noted that Dragon Springs "has better

7

information about and access to its own property, to enable it to investigate the claims". Additionally, as set forth in Plaintiff's opposition papers, Plaintiffs do not have access to Dragon Springs' property, which is secured by fencing, security gates, security guards, security dogs, woods, and elevation. *See* Plaintiffs' Opp. Br. at p. 15.

Dragon Springs' reliance on *Riverkeeper, Inc. v. Hudson Wholesalers Rest. Equip.*, No. 1:22-cv-00564 (BKS/CFH), 2023 WL 6122850 (N.D.N.Y. Sept. 19, 2023) is misplaced because in that case, the plaintiffs failed to ascertain a point source because they did not identify any discernible, confined, and discrete conveyance, such as a culvert, pipe, or drainage ditch, that channels the stormwater from the defendant's facility to Mine Hole Brook, relying instead on speculative allegations of surface runoff. Here, Plaintiffs are not merely relying on surface runoff but have identified specific locations of gullies and pathways on a steep slope from the northeast side of the Compound.

Finally, Plaintiffs' citation to *San Francisco* is similarly misplaced because that case addressed the scope of EPA's authority to impose "end-result" water-quality requirements in NPDES permits and held that the EPA may not require permittees to guarantee that receiving waters meet water-quality standards without specifying effluent limits. *San Francisco*, 604 U.S. 334 at 346. Here, Plaintiffs assert that Dragon Springs discharges Fecal Coliform form its property into the adjoining waters without a permit, not that it exceeded levels of a pollutant set forth in the permit it was issued. *San Francisco* did not involve a citizen suit, did not address Rule 12 pleading standards, and did not hold that evidence of downstream exceedances is irrelevant to providing an unlawful discharge. Defendant's attempt to convert *San Francisco* into a pleading bar fails.

## **CONCLUSION**

For the reasons set forth herein and in Plaintiffs' opposition to Dragon Springs' motion to dismiss, ECF No. 25, Dragon Springs' motion should be denied in its entirety.

Dated: Uniondale, New York
December 23, 2025

Respectfully submitted,

RIVKIN RADLER LLP
*Attorneys for Plaintiffs*

By: */s/ E. Christopher Murray*
     E. Christopher Murray
     Elizabeth S. Sy
     926 RXR Plaza
     Uniondale, New York 11556
     Tel: (516) 357-3242
     Fax: (516) 357-3333
     E.Murray@rivkin.com
     Elizabeth.Sy@rivkin.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY, that on this 23rd day of December 2025, a copy of the foregoing *Plaintiffs' Memorandum of Law in Reply to Defendant's Supplemental Memorandum of Law in Support of Motion to Dismiss* was served via ECF upon:

        CUDDY & FEDER LLP
        Joshua J. Grauer
        Brendan Goodhouse
        Michael Caruso
        445 Hamilton Avenue – 14th Floor
        White Plains, New York 10601
        (914) 761-1300


        */s/ E. Christopher Murray*
        E. Christopher Murray

4908-2648-7681, v. 4