UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MID-NEW YORK ENVIRONMENTAL AND
SUSTAINABILITY PROMOTION COMMITTEE, INC.
(d/b/a NYENVIRONCOM); ROBERT MAJCHER;
GRACE WOODARD; and ALEX SCILLA,

                Plaintiffs,

                              Case No.: 23-cv-04870-KMK

   -against-

DRAGON SPRINGS BUDDHIST, INC.,

                Defendant.
------------------------------------------------------------------X

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**CUDDY & FEDER LLP**
*Attorneys for Defendant*
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

4931-4276-9029.v2

## TABLE OF CONTENTS

I.     **Plaintiffs' stormwater discharge claim is defeated by the terms of the Construction General Permit, and the new argument Plaintiffs introduce in supplemental briefing fails as a matter of law under *San Francisco v. EPA*** ............... 1

II.    **Plaintiffs' wastewater claim is conclusory and implausible** .......................................... 3

**Conclusion** ....................................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*,
  12 F.3d 353 (2d Cir. 1993) .................................................................................... 1, 2

*City and County of San Francisco v. EPA*,
  604 U.S. 334 (2025) ............................................................................................... 1, 2

*Matter of Natural Resources Defense Council, Inc. v. New York State Dep't of Env. Cons.*,
  120 A.D.3d 1235 (2d Dep't 2014) *aff'd* 25 N.Y.3d 373 (2015) .................................. 1

*Mid-New York Environmental and Sustainability Promotion Committee, Inc. v. Dragon Springs Buddhist, Inc.*,
  152 F.4th 413 (2d Cir. 2025) ...................................................................................... 5

*Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*,
  575 F.3d 199 (2d Cir. 2009) ....................................................................................... 5

*U.S. v. Plaza Health Laboratories, Inc.*,
  3 F.3d 643 (2d Cir. 1993) ........................................................................................... 5

**Statutes & Regulations**

NYCRR § 750-1.21 ........................................................................................................ 1

**Other Authorities**

https://www.fs.usda.gov/t-d/programs/im/coliform/introduction_06.shtml ................... 3

I. **Plaintiffs' stormwater discharge claim is defeated by the terms of the Construction General Permit, and the new argument Plaintiffs introduce in supplemental briefing fails as a matter of law under *San Francisco v. EPA*.**

Plaintiffs' first cause of action for unlawful stormwater discharges is premised on two objectively inaccurate claims about the CGP. First, that the CGP does not authorize the discharge of pollutants in stormwater to surface water; second, that the CGP requires Dragon Springs to comply with its Wastewater Permit. (FAC, ¶ 47.) In their supplemental opposition brief (Dkt. No. 46), Plaintiffs appear to finally concede that the CGP does not incorporate the terms of Wastewater Permit.[1] They continue, however, to insist that the CGP does not authorize the discharge of any pollutants through stormwater. (*See Id.*, at 4, 6.) Plaintiffs even go so far as to claim that it is absurd to understand the CGP to authorize the discharge of stormwater with pollutants so long as the requirements of the CGP are satisfied. (*Id.*, at 4.) But that is exactly how the NYSDEC's stormwater permitting regime works. *See* NYCRR § 750-1.21 (state regulations regarding SPDES general permits); *see also Matter of Natural Resources Defense Council, Inc. v. New York State Dep't of Env. Cons.*, 120 A.D.3d 1235, 1240-42 (2d Dep't 2014) *aff'd* 25 N.Y.3d 373 (2015) (discussing structure of municipal separate storm sewer system general permits, which include control measures intended to reduce the discharge of pollutants). Since the CGP does not identify any pollutant save stormwater, Plaintiffs appear to read the permit as authorizing the discharge of distilled water only.[2]

---

[1] Instead, Plaintiffs assert that Dragon Springs "has a specific SPDES permit covering the discharge of Fecal Coliform[.]" (*Id.*, at 4.) This, again, misunderstands NPDES/SPDES permitting. Different permits do not cover different pollutants, they cover different activities. Dragon Springs has one permit that governs its wastewater discharges (Dkt. No. 20-2) and one that governs its stormwater discharges from construction activity (Dkt. No. 20-3). For Plaintiffs to state a claim for unlawful stormwater discharges, they must allege facts that support a claim that Dragon Springs is in violation of the CGP. The contents of the Wastewater Permit have nothing to do with how Dragon Springs manages stormwater.

[2] In *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 357 (2d Cir. 1993), while discussing the impracticality of the plaintiff's position that the discharge of any pollutant not expressly identified in a permit constituted a violation of the CWA, the Second Circuit noted that water itself is a pollutant under the CWA.

1

The terms of the CGP foreclose Plaintiffs' argument, as this Court previously found. (*See* Dkt. No. 29, at 13.) The Second Circuit's holding in *Atlantic States v. Eastman Kodak,* that a discharge of pollutants not listed in a SPDES permit is not a violation of the CWA and cannot be grounds for a citizen suit is dispositive as well. *Eastman Kodak*, 12 F.3d at 357-58.

In their brief, Plaintiffs introduce a new argument and assert that Dragon Springs is violating the terms of its CGP because its stormwater discharges are causing or contributing to a violation of state water quality standards. (Dkt. No. 46, at 5-6.)[3] This is not what Plaintiffs alleged in their first complaint or the FAC and if it is what they intended to allege, it would not have taken them four briefs (including appellate briefing) to explain the claim. More importantly, per the Second Circuit's holding in *Eastman Kodak* and the Supreme Court's March 2025 decision in *City and County of San Francisco v. EPA*, 604 U.S. 334 (2025), any claims Plaintiff might bring based on the water quality of receiving water bodies fail as a matter of law.

In *Eastman Kodak*, the Second Circuit held that a citizen suit may not be used to enforce state regulations that are incorporated into permits, which is what Plaintiffs now claim they are trying to do. *Id*., at 358-60. To the extent there was an ambiguity about whether a citizen suit could be based on an allegation that a permittee was causing or contributing to a violation of state water quality standards, the Supreme Court resolved that with its holding in *San Francisco*. In that case, the Court held that requirements for receiving water bodies to meet water quality standards are not effluent limitations under the CWA and therefore such requirements may not be incorporated into SPDES permits. *Id*., at 346-52.

---

[3] In making this argument, Plaintiffs state that the "CGP authorizes certain stormwater discharges[.]" (Dkt. No. 46, at 5.) It is difficult to square this acknowledgment with Plaintiffs' argument that the CGP prohibits the discharge of any pollutants not identified in it (*id*., at 4) and "does not authorize the discharge of any specific pollutant." (*Id*., at 6.)

Plaintiffs have filed four CWA complaints and written at least half a dozen briefs asserting stormwater discharge violations against Dragon Springs. At various times, Plaintiffs have argued that (i) Dragon Springs was discharging stormwater without a permit; (ii) Dragon Springs was discharging stormwater containing fecal coliform in excess of the amount allowed under its permit; (iii) the CGP prohibits the discharge of any fecal coliform in stormwater; (iv) the CGP incorporates the terms of the SPDES Wastewater Permit; and now (v) Dragon Springs is violating the CGP because its stormwater discharges are contributing to a violation of state water quality standards. All of Plaintiffs' various claims regarding stormwater have been legally deficient. Plaintiffs cannot state a claim for unlawful stormwater discharges and should not be permitted to continue to throw things at the wall in the hope that something sticks. The first cause of action should be dismissed with prejudice.

## II.  Plaintiffs' wastewater claim is conclusory and implausible.

The second cause of action is based on (i) Plaintiffs' allegations regarding water testing showing heightened levels of fecal coliform in waters near the Dragon Springs Campus in comparison to "upstream" waters; and (ii) Plaintiffs' conclusory assertion that Dragon Springs is the only possible source of the allegedly increased levels of fecal coliform. At the pleading stage, the Court must accept as true the factual allegations regarding water testing. It does not need to accept Plaintiffs' conclusions about the cause.

Fecal coliform can come from excrement from fauna, which is plentiful near the Campus, and some studies show its presence may also be the result of plant material.[4] Its concentration in the environment naturally fluctuates and it thrives in warm and moist conditions. The variability

---

[4] For this reason, the United States Forest Service explains: "Fecal coliforms as a group are no longer considered to be good indicators of fecal contamination in surface water because they are not exclusive to fecal material." *See*, https://www.fs.usda.gov/t-d/programs/im/coliform/introduction_06.shtml.

of fecal coliform levels as well as the randomness of individual tests are reasons that state water quality standards use a geometric mean of at least five samples taken within a 30-day period.

Plaintiffs' contention that Dragon Springs is the only potential source of fecal coliform in nearby waters[5] is not just implausible, it is illogical. In addition to the abundant wildlife, there are many residences that border the Basher Kill River near the Campus, including Plaintiff Majcher's house (FAC, ¶ 15), which are likely sources of fecal coliform to the river. At best, Plaintiffs' allegations regarding water testing results are facts that *could* be consistent with Dragon Springs' liability. The problem for Plaintiffs is that they do not have any other factual allegations that might, when paired with the allegations regarding water testing, push Plaintiffs' claims across the line from possible to plausible.

The parties fundamentally agree that in substance the FAC alleges that there are higher levels of fecal coliform in waters near the Campus than upstream and asks the Court to draw inferences that the reason for this is that Dragon Springs is discharging wastewater to surface waters in a manner that is not authorized under its Wastewater Permit.

The dispositive question on this motion is whether that inference is warranted.

It is not. The leap from there being higher levels of fecal coliform in nearby waters to a wastewater discharge violation is simply too great.[6] This is particularly the case where Plaintiffs make no allegations or explanation regarding how wastewater could possibly travel to the location they claim it goes, and where Plaintiffs utterly fail to identify a point source but instead refer to "gullies and pathways," which are features of the landscape, not a man made facility that collects

---

[5] Plaintiffs never specify what waterbody they tested, just that they tested "surrounding waters." (FAC, ¶ 50.) The closest Plaintiffs come to explaining where any testing took place is in Paragraph 52, in which they allege that testing on July 27, 2023, was of waters "immediately adjacent" to the Campus. It is entirely unclear how and if the testing locations relate to the alleged discharge location southwest of a bridge, which is itself unclear.

[6] Plaintiffs assert they are not required to provide "technical proof of causation[.]" (Dkt. No. 46, at 7.) This is a strawman. The standard is plausibility. Plaintiffs' allegations that there are high levels of fecal coliform nearby so Dragon Springs must be doing something illegal simply do not meet that standard.

and channelizes water. *See Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 224 (2d Cir. 2009) (holding key element to determining if something is a point source discharge is if the water is collected and channelized by man through an identifiable conveyance); *U.S. v. Plaza Health Laboratories, Inc.*, 3 F.3d 643, 646-49 (2d Cir. 1993) (holding that examples of point sources in the CWA "evoke images of physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways").

Plaintiffs argue that the deferential standard the Second Circuit applied to their NOI should also be applied to the FAC. But the Second Circuit was clear that the requirements of a pre-suit notice are not the requirements for a pleading to survive a Rule 12(b)(6) motion. *See Mid-New York Environmental and Sustainability Promotion Committee, Inc. v. Dragon Springs Buddhist, Inc.*, 152 F.4th 413, 426-27 (2d Cir. 2025); *see also* Dkt. No. 41, p. 2, n. 2-3.

## Conclusion

Plaintiffs' stormwater discharge claim is barred by documentary evidence and otherwise fails as a matter of law. The wastewater discharge claim is entirely conclusory and the FAC lacks factual allegations regarding multiple required elements of a citizen suit claim. Considering the long history between these parties generally, and specifically with respect to Plaintiffs' repeated efforts to plead a CWA claim, the CWA claims should be dismissed with prejudice, and the Court should decline to exercise supplemental jurisdiction of the pendent state law claim.

Dated: White Plains, New York
        January 5, 2026

4931-4276-9029.v2

Respectfully submitted,

**CUDDY & FEDER LLP**
*Attorneys for Defendant*
*Dragon Springs Buddhist, Inc.*

*/s/ Brendan Goodhouse*

By: Joshua J. Grauer (JG4594)
    Brendan Goodhouse (BG1204)
    Michael Caruso (MC0117)
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Tel: (914) 761-1300

6

4931-4276-9029.v2